AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
U.S. District Court
District of Kansas

# UNITED STATES DISTRICT COURT
### for the
District of Kansas

DEC 30 2020

Clerk, U.S. District Court
By _____ Deputy Clerk

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| INFORMATION ASSOCIATED WITH FACEBOOK USER LOREN.OLSON.391 (Facebook ID 100027275592200) as further described on Attachment A. | ) ) ) ) |

Case No. 20-MJ-6172-01-KGG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
INFORMATION ASSOCIATED WITH FACEBOOK USER LOREN.OLSON.391 (Facebook ID 100027275592200) as further described on Attachment A.

located in the _____ Northern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251 | Production of Child Pornography |
| 18 U.S.C. § 1591 | Sex Trafficking of a Minor |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Andrew Campbell, SA, Federal Bureau of Investigation
*Printed name and title*

Sworn to before me and signed telephonically ~~in my presence.~~

Date: Dec. 30, 2020

_____
*Judge's signature*

City and state: Wichita, Kansas

Honorable Kenneth G. Gale, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID LOREN.OLSON.391 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. 20-m-6172-01-KGG |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Andrew Campbell, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.     I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been employed by the FBI for approximately five years. I am assigned to the Kansas City Division-Wichita Resident Agency, investigating violent crimes, drug trafficking crimes, child exploitation, and firearms violations in the areas in and surrounding Wichita, Kansas.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. Sections 2251(a) and 1591(a)(1) have been committed by LOREN OLSON.  There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

### PROBABLE CAUSE

5.      On or about September 29, 2020, Facebook submitted CyberTipline Report 8063329 to the National Center for Missing and Exploited Children. This report included the content of communications between two accounts: LOREN.OLSON.391 (Facebook ID 100027275592200) and an account identified as operated by a minor[1].

6.      For the LOREN.OLSON.391 account, Facebook provided additional identifiers including: the user's name; the user's mobile phone numbers 620-245-4897 and 620-553-2078 (both of which Facebook listed as "verified[2]"); the user's date of birth and approximate age; and the user's most recent login IP address (166.182.84.9 on August 12, 2020, at 1:41.08 UTC). All of these identifiers, except for the IP address, would have been supplied by the user.

7.      For the minor's account, Facebook provided additional identifiers including: the user's name; the user's mobile phone number (which Facebook listed as "verified"); the user's date of birth and approximate age; and the user's most recent login IP address (the IP address

---

[1] At the time of Facebook's report, the minor was 15 years old. At the time of the communications contained in the report, the minor was 14 years old.

[2] This means the user provided Facebook the phone number, and Facebook sent a message to the user at the phone number to which the user responded to verify or authenticate account access.

geolocated to Lindsborg, Kansas). All of these identifiers, except for the IP address, would have been supplied by the user.

8.    According to Facebook, the content captured and reported by Facebook had been reviewed by Facebook personnel. Facebook's report showed messages, starting on May 7, 2020[3], wherein Loren Olson begins his side of communication asking, "Are you ready to fuck again." Loren Olson goes on to say, "Tomorrow sometime I want to take my 2 pictures of you. One of you only and the other with you and I fucking each other."

9.    Facebook's reported communications jump to July 24, 2020, at which point Loren Olson wrote, "You are telling me now that you do not want to have sex with me anymore, so if that's how you truly feel I will never ask you again to do it with me." The following day, on July 25, 2020, the communications show Loren Olson stating "I want to fuck your pussy now."

10.    Facebook's reported communications jump to July 27, 2020, at which point Loren Olson stated "I guess that you do not want to have any more sex with me right." The minor responded, "I do but I don't know when." Loren Olson responded, "Well when you make up your mind please let me know, I guess that you do not want any money too." The minor responded, "I do want money it is just it seems like all you want me to do is have sex with you then you take pictures of my body and then give me money I feel like I am your little Whore." Loren Olson replied, "Sorry that you feel that way now because when you and I made Love to each other bodies it knows that it right because your pussy and my dick Loves each other now."

---

[3] While the reported communications start on May 7, 2020, the content suggests at least one previous encounter. It is anticipated that there are communications, either as direct messages or as posts, with the Minor Victim that precede May 7, 2020. Additionally, it is not uncommon for adult offenders to "groom" a minor over a period of time before engaging is directly sexual communications. Thus, investigators are seeking content for a broader period of time.

11.     FBI issued subpoenas to Facebook for more recent account information for both of the above accounts. In response, Facebook provided additional and more recent IP address information.

12.     FBI issued subpoenas to the providers of the associated IP addresses. The minor's account returned to a subscriber in Lindsborg, Kansas. The Loren Olson account returned to a subscriber identified as Loren Olson at a Pretty Prairie Post Office Box.

13.     A preservation request for the LOREN.OLSON.391 account was sent on 11/18/2020, case number 5529577.

14.     On December 8, 2020, 15 year old Minor Victim participated in a forensic interview at the Sedgwick County Child Advocacy Center. During this interview, Minor Victim confirmed that the reported chat reflected communications between Minor Victim and Loren Olson. Minor Victim identified Loren Olson as the boyfriend of a family member. Minor Victim confirmed the sex acts referenced in the chats occurred.  Minor Victim described the sex acts occurred in an RV in a storage lot in Marquette, Kansas. Minor Victim disclosed Loren Olson provided money to engage in sex acts. Minor Victim disclosed that Loren Olson took pictures of Minor Victim's naked body and genitals with his iPhone. Minor Victim further described that he took pictures as he engaged in sex acts with Minor Victim. Minor Victim advised Loren Olson lived at 517 Lincoln Street, Marquette, Kansas, with Minor Victim's family member.

15.     From training and experience, I know that iPhones are not manufactured in the state of Kansas, such that the device used by Loren Olson would have traveled in interstate commerce prior to taking pictures of Minor Victim.

16.     On December 8, 2020, myself and other special agents with the FBI arrived at Olson's residence to serve a search warrant.  Contact was made with Olson at approximately 5:10

4

p.m. Olson subsequently provided written consent to search his phone and motor home. At approximately 5:39 p.m., Olson was read his *Miranda* rights. Olson waived his rights and agreed to speak with investigators.

17.     During the course of the interview, Olson admitted engaging in sexual intercourse with the Minor Victim multiple times. Olson stated the sexual intercourse took place at his residence and at his motor home, both of which are located in Marquette, Kansas.

18.     Olson admitted providing the Minor Victim with U.S. Currency shortly after the sexual intercourse.

19.     Olson acknowledged he was aware the Minor Victim was under the age of 18 at the time of the sexual activity.[4]

20.     Olson admitted ownership of the cell phone in his possession, and his use and control over the Facebook profile used to communicate with the victim.

21.     Pursuant to the aforementioned statements, Olson was placed under arrest for violating 18 U.S.C. Section 1591 at approximately 6:30 p.m.

22.     Olson's iPhone was submitted for examination, and four video files of apparent pornography were discovered. These videos appear to depict the same two individuals, with features (skin color, hair color, gender) consistent with Loren Olson and Minor Victim. These files included data associated with dates occurring within the time period of reported communications, including: May 8, 2020 (depicting a flaccid penis against postpubescent vagina); May 21, 2020 (depicting a female performing oral sex upon a male); June 6, 2020 (depicting a female performing

---

[4] Olson has associated with at least one member of Minor Victim's family for decades, such that he would have known Minor Victim for much, if not all, of Minor Victim's life.

oral sex upon a male); June 13, 2020 (depicting a closeup of vaginal intercourse). Facebook's reported communications from May 7 forecast the content of the depiction associated with May 8, including the difficulty Loren Olson articulated in maintaining his erection. Thus, it is anticipated that other content maintained by Facebook may similarly reference or correlate to the other depictions and additional criminal acts.

### Background on Facebook

23.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

24.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

25.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

26.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

27.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

28.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account

will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

29.     Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

30.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

31.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

32.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

33.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

8

34.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

35.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

36.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

37.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

38.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal

9

conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

10

39.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

40.     Because Loren Olson actively used Facebook's services to facilitate his criminal activities with the minor, it is probable that Facebook has captured, collected, or stored additional information which may provide evidence of, or context about, Olson's criminal activities. Because Facebook's services collect an array of information based on the user's activities, it is frequently useful and sometimes necessary to compare information collected in different "places" within the account to discern context for other evidence. As an example, while the full communications with the minor may be obviously pertinent to the investigation, a "check-in" to a particular location or an uploaded photo may reveal Olson's whereabouts at or near the time of such communication and tend to show where something happened. Thus, investigators should be authorized to look for information within the account, wherever it might be, that explains or clarifies the "who, what, why, when, where, and how" of the criminal conduct under investigation.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

41.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

11

## CONCLUSION

42.    Based on the foregoing, I request that the Court issue the proposed search warrant.

43.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

44.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

45.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Andrew Campbell
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on *telephonically* Dec. 30, _____, 2020

THE HONORABLE KENNETH G. GALE
UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the **Facebook user ID loren.olson.391** (Facebook ID 100027275592200) that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

I.    **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the account listed in Attachment A:

(a)    All contact and personal identifying information;

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities from 01/01/2019 to 12/22/2020;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from 01/01/2019 to 12/22/2020, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)    All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user from 01/01/2019 to 12/22/2020, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account from 01/01/2019 to 12/22/2020;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

2

(p)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)    All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within **14 days of issuance/service** of this warrant.

**II.      Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18 U.S.C. Sections 2251(a) and 1591(a)(1) including information pertaining to the following matters:

(a) Any and all communications with or about Minor Victim, referenced in the attached Affidavit and known to law enforcement;

(b) Sexual exploitation of a child, production of child pornography, and/or sex trafficking of minors.

(c) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(d) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed

4

electronic data to the custody and control of attorneys for the government and their support staff

for their independent review.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Facebook, and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Facebook. The attached records consist of _____ I further state that:

a.       all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Facebook, and they were made by Facebook as a regular practice; and

b.       such records were generated by Facebook's electronic process or system that produces an accurate result, to wit:

1.       the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Facebook in a manner to ensure that they are true duplicates of the original records; and

2.       the process or system is regularly verified by Facebook, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

6

_____        _____
Date                           Signature

7